## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Jude Valles,

                    Plaintiff,

                              Case No. 1:19-cv-5593-MLB

v.

State Farm Fire and Casualty
Company,

                    Defendant.

_____/

## **OPINION & ORDER**

Plaintiff Jude Valles brings this action against Defendant State Farm Fire and Casualty Company for failure to pay out under a home insurance policy. Defendant moves for partial judgment on the pleadings. (Dkt. 12.) The Court grants Defendant's motion. Plaintiff also moves to file an amended complaint. (Dkt. 25.) The Court denies Plaintiff's motion.

## I.    Background

In November 2018, a waterpipe burst in Plaintiff's kitchen. (Dkt. 1-1 at 1.) Defendant insured Plaintiff's home at the time. (*Id.* at 2.)

When Plaintiff reported the incident, Defendant offered him $9,000 for flood damage. (*Id.*) Plaintiff's appraiser, however, responded that the damage totaled almost $62,000. (*Id.* at 2, 32.) The appraiser asked Defendant to conduct an appraisal of its own. (*Id.* at 2–3, 40–43.) Defendant replied that it would not pay $62,000 but was willing to negotiate. (*Id.* at 2–3.) Plaintiff's appraiser declined to negotiate, saying Defendant "needed to name an Appraiser to get the Appraisal process started, so that [the parties] can name an Umpire if they could not agree on the loss amount." (*Id.* at 3.) Defendant never named an appraiser. (*Id.*)

In September 2019, Plaintiff's appraiser filed a complaint with the Georgia Department of Insurance, claiming Defendant failed to conduct an appraisal in violation of the insurance policy. (*Id.* at 3, 45–48.) Defendant filed a response, saying Plaintiff's claim may be time-barred under the policy because any "action must be started within one year after the date of loss or damage" and Plaintiff's "water damage . . . reportedly occurred on November 12, 2017." (*Id.* at 51–52.) Defendant allegedly misrepresented the date of the water damage as November 2017—instead of November 2018—"in order to cheat Plaintiff out of his

rightful claim." (*Id.* at 3.)  In October 2019, the Department of Insurance issued a short letter saying Defendant "made a reasonable investigation" into Plaintiff's claim.  (*Id.* at 55.)  Defendant ultimately paid Plaintiff only $1,500 for the damage to his home.  (*Id.* at 2, 4.)

In November 2019, Plaintiff filed this lawsuit asserting 8 counts: (1) breach of contract; (2) unfair settlement practices under O.C.G.A. § 33-6-30; (3) unfair business practices under O.C.G.A. § 10-1-391 et seq.; (4) "tort claims" under O.C.G.A. § 51-1-1; (5) fraud; (6) tortious interference; (7) attorneys' fees under O.C.G.A. § 13-6-11; and (8) punitive damages under O.C.G.A. § 51-12-5.1.  In March 2020, Defendant filed a motion for judgment on the pleadings, seeking to dismiss Counts 2–8.  A few months later, Plaintiff sought leave to file an amended complaint in lieu of responding to Defendant's motion. Notwithstanding that request, Plaintiff has since filed a response and a sur-reply to Defendant's motion.[1]

---

[1] Plaintiff's motion to file the sur-reply is granted because it does not change the Court's resolution of Defendant's motion.  (Dkt. 36.) Plaintiff's sur-reply motion also includes a request for a 16-day discovery extension.  (*Id.*)  That request—which Defendant says is moot, anyway— is granted as well.  (Dkt. 39 at 2.)

## II.   Plaintiff's Motion to Amend

Plaintiff seeks to amend his complaint "*in lieu* of responding to Defendant's Motion for Partial Judgment on the Pleadings." (Dkt. 25 at 2.)  But he has since responded (twice) to Defendant's motion.  His motion is thus moot.

Even if it were not moot, the Court would deny Plaintiff's motion to amend as untimely.  On January 14, 2020, the Court's Scheduling Order (Dkt. 7) approved the parties' Joint Preliminary Report and Discovery Plan (Dkt. 6), which states: "Amendments to the pleadings submitted LATER THAN THIRTY DAYS after [January 13, 2020] will not be accepted for filing, unless otherwise permitted by law." (Dkt. 6 at 9.)  The Scheduling Order also incorporates the Local Rules, which state that, subject to inapplicable exceptions, "all . . . motions must be filed WITHIN THIRTY (30) DAYS after [January 13, 2020] unless the filing party has obtained prior permission of the Court to file later."  LR 7.1(A)(2), NDGa.; (*see* Dkts. 6 at 9; 7).  Plaintiff filed his motion to amend on June 28, 2020, about four and a half months after the Scheduling Order's deadline (though case deadlines were stayed for about two and a half of these months).  *See Goolsby v. Gain Techs., Inc.*, 362 F. App'x 123, 127, 131

4

(11th Cir. 2010) (scheduling order approved parties' joint preliminary report and discovery plan, thereby incorporating amendment deadline listed in that filing).

"[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998). Rule 16 provides that the scheduling order "may be modified only for good cause," Fed. R. Civ. P. 16(b)(4), which "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension," *Sosa*, 133 F.3d at 1418. "This means that the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Kozyrev v. Ponomarenko*, 2020 WL 977635, at *1 (S.D. Fla. Feb. 28, 2020).

Plaintiff has not even tried to show he was diligent here (even after Defendant pointed this out in its response brief). His motion is less than two pages long, does not address Rule 16, does not cite any supporting authority in violation of Local Rule 7.1(A)(1), and says nothing about diligence or good cause. (*See* Dkt. 25.) "This alone is enough to deny

[Plaintiff] leave to amend." *Gallagher Benefit Servs., Inc. v. Campbell*, 2020 WL 3404935, at *2 (N.D. Ga. June 11, 2020) (collecting cases).

The Court also, on its own review, sees nothing in Plaintiff's proposed amended complaint that justifies the untimeliness here. *See Pugh v. Kobelco Const. Mach. Am., LLC*, 413 F. App'x 134, 136 (11th Cir. 2011) (denying motion to amend filed "more than three months after the expiration of the deadline for amending pleadings"); *Goolsby*, 362 F. App'x at 128, 131 (denying motion to amend filed "nearly two months *after* the parties' deadline for amending the pleadings"). For example, the main change in Plaintiff's proposed complaint is that it drops Counts 2 and 3. But Plaintiff vowed to dismiss those counts "within 30 days" way back in January 13, 2020 (after Defendant pointed out they were not viable). (Dkt. 6 at 4.) He never did so. It is not diligence to sit on information for several months before acting on it. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) ("Southern Grouts lacked diligence, at the very least, because it waited until August 5, 2008 to file a motion to amend its complaint with information that it had known over a month before."); *Aldridge v. Travelers Home & Marine Ins. Co.*, 2016 WL 10567690, at *2 (N.D. Ga. Nov. 30, 2016) ("[Plaintiffs]

have not been diligent because the Third Amended Complaint is based on nothing more than facts and law that Plaintiffs have had access to for well over a year."). The Court denies Plaintiff's motion to amend.[2]

## III. Defendant's Motion for Judgment on the Pleadings

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). "If a comparison of the averments in the competing pleadings reveals a material dispute

---

[2] Even if Plaintiff had shown good cause under Rule 16, the Court would deny his motion to amend as futile and unduly prejudicial to Defendant. *See Mobley v. State Farm Fire & Cas. Co.*, 2020 WL 5819385, at *4 (N.D. Ga. July 22, 2020) (denying as futile and unduly prejudicial an almost identical motion to amend filed in a similar case by the same attorney representing Plaintiff here); *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) ("The district court . . . need not allow an amendment . . . where allowing amendment would cause undue prejudice to the opposing party [or] where amendment would be futile.").

of fact, judgment on the pleadings must be denied." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

A motion for judgment on the pleadings under Rule 12(c) is "substantially similar" to a motion to dismiss under Rule 12(b)(6). *Scales v. Talladega Cnty. Dep't of Human Res.*, 2012 WL 3775837, at *6 (N.D. Ala. Aug. 27, 2012). Both challenge "whether the complaint has stated a claim for relief." *Dixon v. Ga. Dep't of Pub. Safety*, 135 F. Supp. 3d 1362, 1369 (S.D. Ga. 2015); *see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Both require the court to "accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). And, to survive either motion, "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a speculative level." *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007). "The main difference between the motions is that a motion for judgment on the pleadings is made after an answer and that answer may also be considered in deciding the motion." *United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011).

### B.    Counts 2–3

Counts 2–3 assert claims under the Unfair Settlement Practices Act and the Fair Business Practices Act.  In his briefing, Plaintiff purports to "withdraw[]" and "abandon[]" both claims.  (Dkts. 30 at 7; 36 at 5.) Counts 2–3 are thus dismissed.  *See Javits v. State Farm Fire & Cas. Co.*, 2014 WL 4230069, at *8 (N.D. Ga. Aug. 26, 2014) (deeming "abandoned" any claims on which plaintiff said he did "not wish to proceed"); *Gailes v. Marengo Cnty. Sheriff's Dep't*, 916 F. Supp. 2d 1238, 1244 n.11 (S.D. Ala. 2013) ("The Court will of course treat . . . a claim as abandoned if the plaintiff has clearly manifested an intention to abandon it, as by express withdrawal.").

### C.    Counts 4–6

Plaintiff asserts claims for unspecified "tort[s]" (Count 4), fraud (Count 5), and tortious interference (Count 6).   Defendant says these claims should be dismissed because "Plaintiff has not pled any independent duty that [Defendant] owed him outside of the [insurance] contract."  (Dkt. 12-1 at 13.)  The Court agrees.

"[A] defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty

created by statute or common law." *Javits*, 2014 WL 4230069, at *11. That is, "absent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of a contractual duty." *Id.* There must be an "independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." *Tate v. Aetna Cas. & Sur. Co.*, 253 S.E.2d 775, 777 (Ga. Ct. App. 1979).

"Georgia law is clear that improper claims handling is a matter of contract, not tort," because it almost never triggers a duty outside the contract itself. *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1363–64 (N.D. Ga. 2014). That means an insurer does not trigger an independent legal duty when it "fails to pay the plaintiff the full amount of damages owed under the [insurance policy]" or when it otherwise botches "the manner in which [it] processe[s] Plaintiff['s] claim for coverage." *Ali v. Travelers Home & Marine Ins. Co.*, 2019 WL 2083541, at *4–5 & n.6 (N.D. Ga. Feb. 8, 2019); *Tate*, 253 S.E.2d at 777. If a claim is even "related" to this kind of insurance processing, it generally sounds in contract—not tort—because no extra-contractual duty applies. *See id.*; *Aldridge*, 2016 WL 10567690, at *3; *see also*

*Camacho*, 13 F. Supp. 3d at 1364 ("[N]o independent duty to handle [insurance] claims with care exists in tort under Georgia law.").

Counts 4–6 claim Defendant improperly "manage[d] . . . Plaintiff's claims under their homeowners policy"; "low-ball[ed] the claim amounts"; "delayed any payment to Plaintiff"; and "fraudulently minimized the nature and extent of [Plaintiff's] damages." (Dkt. 1-1 at 8–10.) All of these allegations concern "the manner in which Defendant processed Plaintiff['s] claim for coverage" or Defendant's "fail[ure] to pay the plaintiff the full amount of damages owed under the [insurance policy]." *Ali*, 2019 WL 2083541, at *4; *Tate*, 253 S.E.2d at 777. That means Defendant's "alleged duty to Plaintiff arises, if at all, under the Policy and thus can only support a claim for breach of contract." *Armstead v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 6810727, at *10 (N.D. Ga. Dec. 3, 2014); *see Tate*, 253 S.E.2d at 776–77 (where insured claimed insurer used "incompetent adjuster," "commit[ed] an unfair business practice," "fail[ed] to use due care to include all of plaintiff's losses," "fail[ed] to properly inspect plaintiff's losses and property," and "fail[ed] to consider plaintiff's estimates of his loss," there was an "absence of any statutory

11

duty owed to the plaintiff" and "[i]f the duties in question arose at all, they arose out of the contract").

To be sure, "the existence of a confidential relationship can create independent duties, the breach of which may constitute a tort." *Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London*, 2007 WL 4592099, at *5 (N.D. Ga. Dec. 28, 2007).  But "Georgia law is clear that generally there is no confidential relationship between an insured and an insurer." *Yai v. Progressive Bayside Ins. Co.*, 2009 WL 383362, at *8 (N.D. Ga. Feb. 12, 2009); *see Willis v. Allstate Ins. Co.*, 740 S.E.2d 413, 417 (Ga. Ct. App. 2013) ("Generally, no fiduciary relationship exists between an insured and his or her insurer.").  "The relationship between the two parties is governed instead by the insurance agreement." *Prime Mgmt.*, 2007 WL 4592099, at *5.  "Nothing alleged by Plaintiff in [his] original complaint or [his] proposed amended complaint even suggests that the relationship between the Plaintiff and Defendant is anything more than contractual." *Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1162 (M.D. Ga. 2005); *see Aldridge*, 2016 WL 10567690, at *3 ("[W]here . . . a dispute arises as to whether the insurer is obligated to pay a claim . . . [,] [t]here is no special relationship between

12

the parties . . . , only a contractual one.")  And the Court sees no basis for reading in any such relationship either.

Despite these problems, Plaintiff makes several arguments in support of Counts 4–6.  The Court rejects each.

### 1.    Plaintiff's "Tort Claims" (Count 4)

In Count 4, Plaintiff claims Defendant owed him an independent duty under the Fair Business Practices Act and the Unfair Settlement Practices Act.  (Dkt. 1-1 at 8.)  He is wrong.  The former statute does not even apply to insurance transactions.  *See Ferguson v. United Ins. Co. of Am.*, 293 S.E.2d 736, 737 (Ga. Ct. App. 1982) ("[I]nsurance transactions are among those types of transactions which are exempt from the Fair Business Practices Act.").  And the latter statute "do[es] not create an independent duty for which plaintiffs could bring a negligence claim."  *Thercy v. Allstate Prop. & Cas. Ins. Co.*, No. 1:13-cv-1099-RWS (N.D. Ga. Aug. 29, 2013), ECF No. 18 at 11.  Indeed, the Unfair Settlement Practices specifically prohibits conduct that implicates "breach of contract issues which would be governed by the parties' insurance policy."  *Id.*

Plaintiff next claims Defendant owed him an independent "implied" duty of "good faith and fair dealing." (Dkts. 1-1 at 8; 30 at 8.)  But he is wrong again.  "Although a duty of good faith and fair dealing is implied in every contract, this duty is contractual in nature and does not ordinarily give rise to tort liability." *ServiceMaster Co., L.P. v. Martin*, 556 S.E.2d 517, 522 (Ga. Ct. App. 2001); *see Garrett*, 427 F. Supp. 2d at 1162 ("Plaintiff cannot sustain an independent claim based on the covenant of good faith and fair dealing" because it is only "applicable when considering Plaintiff's breach of contract claim"); *WirelessMD, Inc. v. Healthcare.com Corp.*, 610 S.E.2d 352, 358 (Ga. Ct. App. 2005) ("[T]he implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself.  As such, the covenant is not independent of the contract.").  To the extent Plaintiff believes an independent duty exists based on some "*modified* version of the implied covenant of good faith and fair dealing," "Georgia law will simply not support a tort claim as Plaintiff suggests." *Garrett*, 427 F. Supp. 2d at 1163 (emphasis added). Count 4 is not viable here.  It is dismissed.[3]

---

[3] Count 4 fails for the additional reason that it never specifies or explains the "tort claims" it purports to assert.

### 2.    Plaintiff's Fraud Claim (Count 5)

In Count 5, Plaintiff says Defendant "back dated the incident date one full year" in order to "defraud him out of his legitimate losses" (*i.e.*, "in order to deny Plaintiff's claim").  (Dkts. 30 at 8–9; 36 at 5.) Plaintiff says these allegations plead a viable tort claim because they involve "fraudulent actions outside of the contractual setting."  (Dkts. 30 at 7, 9; 36 at 9–10.)  The Court disagrees.

In *Aldridge*, the insureds brought a fraud claim against their insurer on the grounds that it (1) "did not acknowledge its erroneous reading of the policy, but rather tried to cover it up"; (2) told the insureds it was "assessing the damages to allow repairs to commence when it was actually conducting an unauthorized re-investigation"; and (3) "misrepresented the findings set forth in a report on the damage to [the insureds'] home."  2016 WL 10567690, at *3.  The court found these allegations "d[id] not support an independent tort claim for negligence or fraud" because they were "part and parcel of the factual dispute underlying the breach of contract claim" or otherwise "relate[d] to the insurer's failure to perform its duty to pay a valid claim under the insurance contract."  *Id.*

The same is true here.  Like the insureds in *Aldridge*, Plaintiff essentially says his insurer "misrepresented"—and "tried to cover . . . up"—information about Plaintiff's insurance claims in order to "avoid paying the claims."  *Id.*  But, as the court explained in *Aldridge*, these allegations "do not support an independent tort claim for negligence or fraud" because they "relate to the insurer's failure to perform its duty to pay a valid claim under the insurance contract."  *Id.*; *see Ali*, 2019 WL 2083541, at *5 n.6 ("fraud claim" was not viable because it "relate[d] to the manner in which Defendant processed Plaintiffs' claim").[4]

Plaintiff also advances another fraud theory in his briefing.  He says Defendant fraudulently induced him to enter the insurance contract by "selling him a policy with an Appraisal Clause and never intending to honor same."  (Dkt. 30 at 8.)  But, as Plaintiff acknowledges, "fraudulent inducement . . . aim[s] to redress fraudulent *pre-contractual* conduct."

---

[4] To the extent Plaintiff's fraud claim is based on the backdating incident, it also fails because Plaintiff does not allege he justifiably relied on the misrepresentation.  *See Quint Measuring Sys., Inc. v. Home Depot USA, Inc.*, 2011 WL 13216960, at *9 (N.D. Ga. Mar. 8, 2011) ("Under Georgia law, the elements of fraud are (1) a false representation, (2) scienter, (3) intention to induce plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff.").

*Gulfstream Aerospace Servs. Corp. v. U.S. Aviation Underwriters, Inc.*, 635 S.E.2d 38, 45 (Ga. Ct. App. 2006); (*see* Dkt. 30 at 7).  And Plaintiff's complaint says nothing whatsoever about the parties' pre-contractual relationship.  It includes no allegations about any pre-contractual (1) "false representation made by the defendant"; (2) "intention to induce the plaintiff to enter [the] contract based upon the false representation"; or (3) "justifiable reliance by the plaintiff."  *Pinnock v. Kings Carlyle Club Apartments, LLC*, 819 S.E.2d 515, 518 (Ga. Ct. App. 2018).  These are all required elements for a fraudulent inducement claim.  *Id.*  And none are pled in the complaint.  The claim is a non-starter.  Count 5 is dismissed.[5]

### 3.    Plaintiff's Tortious Interference Claim (Count 6)

Count 6 asserts a tortious interference claim on the grounds that Defendant "unlawfully interfered and/or attempted to interfere with Plaintiff's enjoyment of his property, with his business relationships with his Appraiser, with his contractual relationships, and/or other inchoate rights which Plaintiff had or hoped to have."  (Dkt. 1-1 at 10.)  Plaintiff

---

[5] Plaintiff's response brief concedes his "fraud in the inducement claim did not accrue even after [he] filed his complaint."  (Dkt. 30 at 8–9.)  And his sur-reply, like his complaint, omits the theory altogether.  (*See* Dkt. 36.)

did not respond to Defendant's motion to dismiss this claim, even after Defendant accused him of abandoning it.  (*See* Dkt. 35 at 8.)  The Court thus deems Count 6 abandoned.  *See U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264, at *9 (S.D. Fla. July 12, 2012) ("The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim."); *Brown v. J.P. Turner & Co.*, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) ("Plaintiffs' failure to respond is in itself grounds for the Court to rule in favor of defendant.").[6]

---

[6] *See Adam v. Med. Ctr. of Navicent Health*, 2018 WL 4760502, at *4 (M.D. Ga. Oct. 2, 2018) ("given Plaintiff's failure to respond to those arguments, . . . she essentially abandons those claims and concedes" they should be dismissed); *Evans v. Jefferson Cty. Comm'n*, 2012 WL 1745610, at *11 (N.D. Ala. May 15, 2012) ("The court concludes that [plaintiff's] failure to respond to any of these arguments constitutes abandonment of that claim."); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  The Eleventh Circuit has suggested, in unpublished dicta, that plaintiffs do not "abandon . . . claims by failing to address them in [their] response brief to the defendants' motion to dismiss."  *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007).  But several courts in this Circuit continue to take a contrary view.  *See Gailes*, 916 F. Supp. 2d at 1243 n.9 (collecting cases).  The Court believes an abandonment finding is appropriate here because (1) Defendant's "challenge to the plaintiff's [tortious interference] claim has facial merit"; (2) Plaintiff never addressed this challenge despite filing a response brief *and* a sur-reply; and (3) Defendant's reply accused Plaintiff of abandoning the claim and Plaintiff never disputed that assertion in his sur-reply.  *Id.* at 1244.

Even if the claim were not abandoned, it would fail on the merits of Plaintiff's complaint.   "The elements of tortious interference with a contract [or business relations] consist of: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Rowell v. Phoebe Putney Mem'l Hosp., Inc.*, 791 S.E.2d 183, 185 (Ga. Ct. App. 2016); *see Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 444 S.E.2d 814, 817 (Ga. Ct. App. 1994).  "A plaintiff must also show that the defendant is a stranger to the contract at issue and the business relationship giving rise to and underpinning the contract." *Quint Measuring*, 2011 WL 13216960, at *7.

Plaintiff apparently claims Defendant interfered with his contract or relationship with his appraiser.  But he does not allege that his appraiser breached any contractual obligation to Plaintiff or terminated his relationship with Plaintiff, much less that he did so because of Defendant's misconduct or that Plaintiff suffered any damages as a

result.  It is not even clear that Defendant counts as a "stranger" here because Defendant likely "had a direct economic interest in the property that was the subject of [Plaintiff's] contract" or relationship with the appraiser.  *Quint*, 2011 WL 13216960, at *7 ("[O]ne is not a stranger to the contract just because he is not a party to the contract.").  And, finally, as the Court has already explained, "Plaintiff does not specify facts which would support a finding that Defendant[] owed [him] any duty independent of those created by the written insurance contract." *Worsham v. Provident Cos., Inc.*, 249 F. Supp. 2d 1325, 1334 (N.D. Ga. 2002) (granting summary judgment on tortious interference claim); *see Kauka Farms, Inc. v. Scott*, 352 S.E.2d 373, 377 (Ga. 1987) ("The conduct which [plaintiff] asserts as . . . tortious interference with property right[s] . . . is nothing more than allegations of breach of contract.").  For all of these reasons, the Court dismisses Count 6.

### D.   Count 7

Count 7 asserts a claim for attorneys' fees under O.C.G.A. § 13-6-11 on the grounds Defendant has shown "stubborn litigiousness" and caused Plaintiff "unnecessary trouble and expense."  (Dkt. 1-1 at 11.)  But a "claim for attorneys' fees and litigation expenses under O.C.G.A.

§ 13-6-11 [is] barred by O.C.G.A. § 33-4-6, which provides insureds the exclusive procedure to recover attorneys' fees." *Powers v. Unum Corp.*, 181 F. App'x 939, 944 n.8 (11th Cir. 2006); *see Javits*, 2014 WL 4230069, at *12 n.14 ("[R]ecovery for failure to timely pay a claim and for attorney's fees and costs is limited to a claim under O.C.G.A. § 33-4-6."); *Trade AM Int'l, Inc. v. Cincinnati Ins. Co.*, 2012 WL 1865406, at *4 (N.D. Ga. Jan. 18, 2012) ("[W]here an insured brings suit against its insurer for breach of an insurance contract based upon failure to pay and seeks to recover attorneys' fees and expenses for bad faith, the exclusive remedy to the insured is under § 33-4-6.  Recovery under the general provisions of § 13-6-11 will not be allowed.").   Contrary to Plaintiff's assertion, "[p]laintiffs may not seek fees under § 13-6-11 as an alternative claim even where they cannot prevail under § 33-4-6." *Thercy v. Allstate Prop. & Cas. Ins. Co.*, No. 1:13-cv-1099-RWS (N.D. Ga. Aug. 29, 2013), ECF No. 18 at 12–13 & n.4; (*see* Dkt. 36 at 4, 7, 9).  So Count 7 is dismissed.

### E.   Count 8

Count 8 asserts a claim for punitive damages under O.C.G.A. § 51-12-5.1.  (Dkt. 1-1 at 11.)  But "[i]t is well settled in Georgia that punitive damages are not allowed in contract claims and that a plaintiff

must allege a tort claim in order to recover punitive damages." *Headrick v. State Farm Fire & Cas. Ins. Co.*, 2008 WL 11322195, at *2 (N.D. Ga. Mar. 28, 2008); *see Javits*, 2014 WL 4230069, at *14 ("Under Georgia law, punitive damages cannot be awarded for breach of contract."). "[B]ecause Plaintiff's tort claims have been dismissed, h[is] claim for punitive damages, under O.C.G.A. § 51-12-5.1, must also be dismissed." *Garrett*, 427 F. Supp. 2d at 1163.  Count 8 is dismissed.

## IV.   Conclusion

The Court **GRANTS** Defendant's Motion for Partial Judgment on the Pleadings (Dkt. 12), **DENIES** Plaintiff's Motion to File Amended Complaint (Dkt. 25), and **GRANTS** Plaintiff's "Combined Motion" for a sur-reply and discovery extension (Dkt. 36).   Counts 2–8 are **DISMISSED**; Count 1 is the only claim left in this case.

**SO ORDERED** this 1st day of February, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE