IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Jude Valles,

        Plaintiff,

v.

        Case No. 1:19-cv-5593-MLB

State Farm Fire and Casualty Company,

        Defendant.

_____/

**OPINION & ORDER**

Plaintiff Jude Valles brings this action against Defendant State Farm Fire and Casualty Company for failing to pay an insurance claim. Defendant filed a motion to amend its answer (Dkt. 58) and a motion for summary judgment (Dkt. 60). Plaintiff did not respond to the former. The Court grants Defendant's motion for summary judgment and denies Defendant's motion to amend as moot.

I.  **Factual Background**

   A.  **The Policy**

In 2017, Plaintiff obtained a homeowners insurance policy from Defendant for a property at 2272 Norbury Drive SE in Smyrna, Georgia. (Dkt. 60-11 ¶ 1.) The policy was initially effective from May 8, 2017 through May 8, 2018, but Defendant renewed it for another year. (*Id.*)

The policy set forth several duties and conditions Plaintiff was required to follow in order to obtain coverage for any loss. One provision, entitled "Your Duties After Loss," required Plaintiff give Defendant or its agent "immediate notice" of any loss, protect the property from further damage or loss (including by making reasonable and necessary temporary repairs to protect the property), allow Defendant to inspect the property upon any reasonable request, and provide Defendant records and documents it requested as part of its coverage determination. (*Id.* ¶ 2.) The same provision also required Plaintiff to provide Defendant a "signed sworn proof of loss" within 60 days after the loss identifying, to the best of Plaintiff's knowledge and belief, certain information, including the time and cause of the loss and specifications of any damaged building and detailed estimates for repair of the damage. (*Id.*) A provision

entitled "Suit Against Us" required Plaintiff to be in compliance with the policy provisions before filing suit. (*Id.*) It also required Plaintiff to file any lawsuit within one year from any covered loss. (*Id.*)

Another provision, entitled "Losses Not Insured," stated Defendant was not responsible for any "loss that would not have occurred in the absence of . . . "[n]eglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered." (*Id.* ¶ 3.) The policy also included an endorsement that specifically relieved Defendant of liability if Plaintiff engaged in fraud. It stated that Defendant would not provide coverage if the "insured has intentionally concealed or misrepresented any material fact or circumstance relating to [the] insurance, whether before or after a loss." (*Id.* ¶ 4.) This exclusion applies only to facts or circumstances which contribute to the loss or on which Defendant relies and that are either (1) material or (2) made with intent to deceive. (*Id.*) Finally, another endorsement specifically excludes any recovery for diminution in value of the property. (*Id.* ¶ 5.)

### B.    The Loss and the Claims Process

Plaintiff submitted a claim to Defendant for insurance benefits on June 4, 2019.  (*Id.* ¶¶ 7–8.)  The next day, State Farm representative Christina Hammond contacted Plaintiff and Naedge Adam (Plaintiff's wife and a named unsured).  They said there had been a leak under the kitchen sink, that they had fixed the leak, but mold was present. (*Id.*)  Both Plaintiff and his wife said the loss occurred on November 12, 2017, but they had been traveling and were thus delayed in reporting the loss to Defendant. (*Id.*)

On July 2, 2019, State Farm representative John Tafs conducted an inspection of the property.  (*Id.* ¶ 12.)  He created an estimate for the damage to the interior of the property, estimating the replacement value of the damage to be $9,170.54.  (*Id.*)  He calculated depreciation as $2,256.58 and (after considering the policy deductible) issued Plaintiff a net payment of $1,692.96. (*Id.*)

On July 6, 2019, Bruce Fredrics contacted Defendant via email on behalf of Plaintiff and presented his own appraisal demand, claiming the replacement value was in excess of $61,000. (*Id.* at ¶ 13; Dkt. 1-1 at 38.)  On July 17, 2019, Fredrics spoke to Hammond and said Hammond's

initial appraisal was incorrect. (Dkt. 60-11 ¶ 14.) He also said the loss occurred on November 12, 2018—not November 12, 2017 as the insureds had said. (*Id.*) On July 19, 2019, Defendant sent correspondence to Fredrics, saying

> State Farm is requesting a copy of the contractor's repair estimate outlining the items in dispute. At this time, State Farm is unable to move forward with the appraisal demand until the disputed amount of the loss has been submitted for our review.
>    . . .
> Also, it has been brought to our attention the recorded date of loss may be incorrect. State Farm is requesting a copy of the plumber report, plumber's invoice and any other written documentation available confirming the date the loss occurred.

(*Id.* ¶ 16.) That same day, Defendant sent Plaintiff a letter raising concerns as to whether Plaintiff had complied with the policy conditions and/or correctly reported the date of the loss. Defendant stated

> It is questionable whether the conditions of the policy have been violated by reason of delay by or on behalf of the insured in giving written notice to the Company concerning the accident or occurrence.
>
> It is questionable whether the date the loss occurred was correctly reported.

(*Id.* ¶ 15.)

On August 29, 2019, Tafs called Fredrics to discuss Fredrics's repair estimate and coordinate a second inspection. (*Id.* ¶ 17.) On September 26, 2019, Tafs called Plaintiff to request documentation from the plumber Plaintiff had allegedly hired to repair the leak. (*Id.* ¶ 18.) He did this to verify the date of the loss. (*Id.*) He also sought to arrange another inspection of the property. (*Id.*) Tafs followed up several times, leaving voicemail messages and sending Plaintiff letters on September 27, 2019, October 11, 2019, and October 16, 2019. (*Id.* ¶¶ 19, 20, 21.) On October 26, 2019, Tafs spoke with Plaintiff to discuss the difference in the estimates and to coordinate a joint inspection. (*Id.* ¶ 22.) Plaintiff told Tafs to contact Fredrics. (*Id.*)

### C. Plaintiff's Lawsuit

Plaintiff filed suit against State Farm in the State Court of Gwinnett County on November 7, 2019, and Defendant timely removed to this Court. (*See* Dkt. 1-1.) Prior to filing suit, Plaintiff neither submitted a claim for personal property or additional living expenses to State Farm, provided the receipt for plumbing repairs, nor arranged the joint inspection of the property that Defendant requested. (Dkt. 60-11 ¶¶ 23–25.) On March 17, 2020, Defendant filed its Motion for Partial

Judgment on the Pleadings (Dkt. 12). The Court granted that motion, dismissing Counts II through VIII and leaving only Count I—Plaintiff's claim for breach of contract. (Dkt. 57.)

In his Complaint, Plaintiff alleged the loss occurred on November 12, 2018, rather than 2017. (Dkt. 1-1 ¶ 2.) Plaintiff further alleged that, immediately upon learning of the leak, he contacted Presmy iHome "to repair the burst pipe and to try to minimize the water damage in the flooded areas in his home." (*Id.* ¶ 3.) In support of that contention, Plaintiff attached to his complaint a proposal from Presmy iHome dated November 12, 2018. (*Id.*, Ex. A.) In it, Presmy iHome allegedly offered to repair a damaged pipe under a sink at the property, run a blower to the kitchen area to prevent mildew, and remove water from the basement. (*Id.*)

During discovery, Defendant obtained unrebutted evidence the proposal was fraudulent and did not accurately reflect the date of any repairs. Specifically, Ovard Presmy, the owner of Presmy iHome, testified that he did not provide the work outlined in the proposal in 2018 (or at any time). (Dkt. 60-11 ¶ 27.) He explained that he created the

proposal in 2019 and backdated it to November 12, 2018 at Plaintiff's request:

> Q. Okay. Did you provide a proposal to Jude Valles for water damage repair to the home?
>
> A. He created it himself on my company name. After I came to his house, start working, and he saw online that I have a PDF/Word that I could – could create proposal in my name that I paid for as a company and I can give you a proposal right then on my phone. The program is already there. I already have it. A -- a -- how you call it? A -- a something that goes where you sign, like a template. And he asked me for -- so many times while I was doing that work that he need to collect a $800 from a company -- State Farm, I -- I believe -- that he did some repair last year, which I'd never been to the house in the time, that -- I deny that. ***I say I didn't do anything***. Find whoever did it for you. They will give you back the receipt. He say, all -- all I need is a receipt so I can prove them that I have done some work so they can refund my money. We e-mail back and forth. It was so confused for me. I don't know why he needed my receipt.

(*Id.* (emphasis added).) Mr. Presmy later testified that this conversation about creating the proposal occurred in approximately late Summer 2019. (*Id.* ¶ 28.) Again, Mr. Presmy specifically confirmed that he did not create the proposal in November 2018. (*Id.*)

Mr. Presmy also testified about text messages he exchanged with Plaintiff regarding the proposal. (*Id.* ¶ 29.) The texts were sent in October 2019, at least eleven months after the alleged loss. (*Id.*) In those

8

texts, Plaintiff requested specific language to be included in the proposal. (*Id.*) Regardless of whether Mr. Presmy created the proposal in Summer 2019 (as he estimated) or October 2019 (as the text messages might suggest), the undisputed evidence shows that he created it long after the alleged loss in November 2018 and backdated the proposal to that time. The undisputed evidence also shows that, contrary to Plaintiff's allegation in the complaint, Presmy iHome did no work to repair the leak that damaged Plaintiff's home, and certainly did not do that work in November 2018.

At his deposition, Plaintiff also could not provide evidence to suggest the loss occurred on November 12, 2018, as he alleged in the complaint. He testified he could not remember the year or month in which the loss occurred. (Dkt. 60-11 ¶ 10.) He testified it happened prior to an incident on November 7, 2018, when a vehicle was stolen from his garage. (*Id.*) He said it happened a couple of months before that. (*Id.*) Plaintiff's wife testified at her deposition that she could not remember the year or month the loss occurred, but she said it may have been the middle of 2018. (*Id.* ¶ 11.)

Defendant filed its motion for summary judgment on Plaintiff's claim for breach of contract on March 29, 2021. (Dkt. 60.) Plaintiff did not respond.

## II. Preliminary Matter Regarding Unopposed Motion for Summary Judgment

A court has the power to grant an unopposed motion for summary judgment pursuant to its Local Rules provided that the non-movant is put on notice that failing to respond to the motion could result in the court granting the motion for summary judgment as unopposed. *See Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam). The Eleventh Circuit has ruled that granting summary judgment in such a manner is appropriate "so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999).

Plaintiff was given ample notice that, if he did not respond to Defendant's motion for summary judgment within the allotted time frame, the Court could deem Defendant's motion unopposed. Local Rule 7.1 dictates that failure to respond to a motion within the applicable time

period "shall indicate that there is no opposition to the motion." LR 7.1(B), NDGa. And pursuant to Local Rule 56.1, the factual allegations within Defendant's Statement of Undisputed Material Facts submitted in conjunction with its motion are deemed admitted because Plaintiff failed to controvert them. LR 56.1(B)(2), NDGa. These rules, which Plaintiff's counsel was required to read and understand before being admitted to practice law in the Northern District of Georgia, put Plaintiff on notice that failure to respond could result in Defendant's motion being considered unopposed. *See Dunlap*, 858 F.2d at 632 ("Local rules may serve the purpose of giving the notice required by Rule 56."). Despite the existence of the uncontested motion for summary judgment supported by facts that are now deemed uncontroverted, the Court will consider the merits of Defendant's motion, only granting that motion if Defendant demonstrates it is entitled to such relief as a matter of law. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

### III. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this

burden, the court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, there is no genuine dispute for trial when the record as a whole could not lead a rational trier of fact to find for the nonmoving party.  *Id.*  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.  The court, however, resolves all reasonable doubts about the facts in favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## IV. Discussion

### A. Plaintiff's Claim is Barred by the Suit Limitation Provision.

Taking the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff is unable to establish the date of loss through any testimony, documents, or other evidence. The undisputed evidence also shows the loss occurred more than one year before Plaintiff filed this lawsuit.

Under Georgia law, an insured has the burden of proving that he sustained a loss covered by the policy. *Shivers Chix v. Ga. Farm Bureau Ins. Co.*, 150 Ga. App. 453, 454 (1979). Contractual suit limitation provisions in insurance policies have consistently been held enforceable by Georgia courts. *See, e.g., Thornton v. Ga. Farm Bureau*, 287 Ga. 379 (2010); *Herring v. Middle Ga. Mut. Ins. Co.*, 149 Ga. App. 585, 586 (1979) (granting an insurer's motion to dismiss when the lawsuit was filed 18 days after the expiration of the one-year suit limitation period). Under contractual limitation periods, suits are barred as untimely even if an insured misses the period within which to file suit by only one day. *Universal Scientific, Inc. v. Safeco Ins. Co. of Amer.*, 174 Ga. App. 768, 773 (1985). Indeed, an insured's compliance with a suit limitation period

14

"is a condition precedent to recovery on an insurance policy." *Beck v. State Farm Mut. Ins. Co.*, 146 Ga. App. 878 (1978); *see e.g., Shelter Am. Corp. v. State Farm Mut. Ins. Co.*, 209 Ga. App. 258 (1993) (affirming summary judgment in favor of insurer where insured did not bring suit within policy's one-year limitation).

Plaintiff's policy contains a one-year suit limitation provision. Plaintiff filed his Complaint on November 7, 2019, thus baring any claim for losses occurring before November 7, 2018. Plaintiff alleges the loss occurred on November 12, 2018, making it timely by five days. The undisputed evidence shows this is not true and the loss occurred long before that. Plaintiff himself testified the loss occurred months prior to the theft of his vehicle on November 7, 2018. (Dkt. 60-11 ¶ 10.) And while Plaintiff denied initially reporting the loss date as November 12, 2017, neither Plaintiff nor his wife could testify as to specifically when the loss occurred during their depositions. (*Id.*) In fact, Naedge Adam testified that the loss may have occurred in the middle of 2018. (*Id.*) The only evidence supporting Plaintiff's contention the loss occurred within the policy's one-year suit limitation is the Presmy iHome proposal dated November 12, 2018. But Mr. Presmy specifically testified that he *never*

15

performed any interior work at the Plaintiff's property, and both Mr. Presmy's testimony and the screenshots of his texts with Plaintiff demonstrate that the proposal was not created until the late summer of 2019 at the earliest. (*Id.* ¶¶ 27–28.) The uncontroverted evidence shows that the proposal was intentionally prepared at Plaintiff's direction in 2019 and fraudulently backdated to convince State Farm and this Court that Plaintiff's claim was not barred by the one-year suit limitation. Accordingly, the Court does not find any facts from which a reasonable jury could conclude the loss occurred in the 12 months prior to the filing of Plaintiff's suit on November 7, 2019.

### B.  Plaintiff's Claim is Also Barred by the Concealment or Fraud Provision in the Policy.

The undisputed facts also demonstrate Plaintiff's claim is barred by the Concealment or Fraud provision in the policy. It states Defendant will not provide any coverage under the policy where the insured has intentionally concealed or misrepresented any material fact relating to the insurance, whether before or after the loss. (*Id.* ¶ 4.)

Under Georgia law "[i]t is only fraudulent false swearing, in furnishing the preliminary proof or in the examinations which the insurers have a right to require, that avoids the policies." *Woods v. Indep.*

16

*Fire Ins. Co.*, 749 F.2d 1493, 1497 (11th Cir. 1985) (quoting *Am. Alliance Ins. Co. v. Pyle,* 62 Ga. App. 156, 160 (1940)). Under a misrepresentation provision in an insurance contract, a willful or intentional misrepresentation of material facts for the purpose of defrauding an insurer will defeat coverage. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1443 (11th Cir. 1984) (citing *Am. Alliance Ins. Co.*, 62 Ga. App. at 160). With regard to questions of materiality of misrepresentation in insurance contracts, "Georgia courts employ a reasonableness test, an objective standard of conduct against which to measure the effect of the insured's false declarations." *Woods*, 749 F.2d at 1497. A fact is material if the fact is one which would influence a prudent insurance company's decision-making process or if the fact might affect the insurer's action with respect to settlement or adjustment of the claim. *Sentry Indem. Co. v. Brady*, 153 Ga. App. 168 (1980); *see also, Meyers v. State Farm Fire & Cas. Co.*, 801 F. Supp. 709, 715 (N.D. Ga. 1992).

Whether a misrepresentation is material is usually a jury question. *Woods*, 749 F.2d at 1497. But "[m]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *Id.* at 1496 (quoting *Long v. Ins. Co. of N.*

17

*Am.*, 670 F.2d 930, 934 (10th Cir. 1982) (internal quotation omitted). In *Meyers v. State Farm Fire & Casualty Co.*, for example, the court granted summary judgment for an insurer where reasonable minds could not differ with regard to the question of the materiality of misrepresentations the plaintiff made during the claims process. 801 F. Supp. at 715 (noting, where policy expressly provided for insured's "provision of detailed financial information following a loss," and for policy to be deemed void "in the event any insured makes any misrepresentation during the course of such examination," that "clearly any misrepresentation with regard to finances given during the course of the post-loss examination must be deemed to be material in nature").

The Court finds summary judgment is appropriate here on the issue of materiality. Reasonable minds could not differ as to the question of the materiality of the misrepresentations made by Plaintiff in alleging the loss occurred on November 12, 2018 and in submitting the backdated and fraudulent proposal to support that contention. Plaintiff made those misrepresentations to deceive Defendant into thinking the loss occurred with the one year limitations period. The document is clearly false as (1) Mr. Presmy never performed any work on Plaintiff's property relating

18

to the loss, and (2) he created the proposal in 2019. (Dkt. 60-11 ¶¶ 27–28.) The texts between Mr. Presmy and Plaintiff show they were still finalizing the proposal in October 2019. (*Id.* ¶ 29.) Where a policy includes a provision barring suits brought more than one year after the date of loss, there can be no question that a representation falsely establishing that the loss occurred within one year of Plaintiff's filing of the lawsuit is material.

The Court finds no genuine dispute as to any material fact that would allow Plaintiff Jude Valles to be entitled to recover under the policy. Because the Court finds summary judgment to be appropriate on the basis discussed herein, the Court need not address Defendant's other arguments as they relate to other provisions in the policy.

## V. Conclusion

The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 60) and **DENIES AS MOOT** Defendant's Motion to Amend Answer (Dkt. 58). The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED** this 29th day of July, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE